UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

B.J.S., Individually and on behalf of N.S., a child with             **DECISION**
  a disability,                                                                                      **and**
                                                                                                          **ORDER**
                                                          Plaintiff,             **------------------------------**
                                                                                                    **REPORT**
                           v.                                                                     **and**
                                                                                      **RECOMMENDATION**
The State Education Department/The University
 of the State of New York,
PAUL F. KELLY, State Review Officer,                                   **07-CV-456A(F)**
RICHARD P. MILLS, Commissioner of Education, and
SPRINGVILLE-GRIFFITH INSTITUTE CENTRAL
 SCHOOL DISTRICT BOARD OF EDUCATION,

                                                          Defendants.

_____

APPEARANCES:    FRANK T. HOUSH, ESQ.
                          Attorney for Plaintiff
                          70 Niagara Street
                          Buffalo, New York 14202

                          ERIC T. SCHNEIDERMAN
                          Attorney General, State of New York
                          Attorney for Defendants State Education Department,
                            Paul F. Kelly, and Richard P. Mills
                          DARREN LONGO
                          Assistant Attorney General, of Counsel
                          Main Place Tower
                          Suite 300A
                          350 Main Street
                          Buffalo, New York  14202

                          HODGSON RUSS, LLP
                          Attorneys for Defendant Springville Griffith Central School District
                          RYAN L.  EVERHART, of Counsel
                          The Guaranty Building
                          140 Pearl Street
                          Suite 100
                          Buffalo, New York 14202

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J.  Arcara on

September 10, 2009, for all pretrial matters.  The case is presently before the court on

Defendants' motions to dismiss filed on April 5, 2010, by Springville-Griffith Institute

Central School District Board of Education's motion to dismiss (Doc. No. 49), and on

October 20, 2010, by Kelly and Mills (Doc. No. 61).[1]


## BACKGROUND and FACTS[2]

Plaintiff B.J.S. ("Plainitff" or "B.J.S."), commenced this action on July 13, 2007,

by filing a complaint alleging on behalf of herself and her child, N.S. ("N.S."), then

enrolled in Defendant Springville-Griffith Institute Central School District ("the School

District"), that Defendants New York State Department of Education ("NYSED"),

NYSED Commissioner Richard P. Mills ("Commissioner Mills" or "Mills"), and NYSED

appointed State Review Officer ("SRO") Paul F. Kelly ("SRO Kelly" or "Kelly") (together,

"State Defendants"), denied N.S. a free and appropriate public education ("FAPE"), for

the 2005-2006 school year in violation of the Individuals with Disabilities Education Act,

20 U.S.C. § 1400 *et seq*. ("the IDEA" or "the Act").  Plaintiff in this action specifically

seeks to have annulled the March 17, 2007 decision rendered by SRO Kelly ("SRO

Decision"), overruling the decision rendered by the School District's appointed Impartial

Hearing Officer ("IHO") James P.  Walsh ("IHO Walsh" or "Walsh"), a nonparty to this

---

[1] Although motions to dismiss are dispositive, because the undersigned is *sua sponte* granting Plaintiff an extension of time pursuant to Fed.R.Civ.P. 4(m) to re-serve Defendant School District, the matters are discussed in this combined Decision and Order and Report and Recommendation.

[2] The Facts are taken from the pleadings and motion papers filed in this action.

action, on December 17, 2006, and amended on December 28, 2006 ("IHO Decision").
The IHO Decision was favorable to Planitff, whereas the SRO Decision was not.

N.S. was first determined by the School District's Committee on Special
Education ("CSE"), during the 2002-2003 school year to be Autistic and, thus, a student
in need of special education and related services.  As such, the School District's CSE
was required to develop for N.S. an Individualized Education Program ("I.E.P.") which, if
correctly followed, would provide N.S. with the FAPE mandated by the IDEA.  During
the 2002-2003 school year, N.S. was educated, pursuant to an Individualized Education
Program ("IEP") in a School District Third Grade inclusion and made substantial
progress in all academic and social areas.  The IEP for the 2005-2006 school year at
issue in this action was not in place until April 4, 2006.  Throughout the period relevant
to this action, N.S. had been educated pursuant to a "Pendency Plan," defined as the
most recent agreed upon IEP, specifically, the IEP for the 2003-2004, despite the fact
that such IEP was found by both an IHO and SRO to be both procedurally and
substantively inappropriate and, as a result, annulled.

Meanwhile, on April 4, 2006, Plaintiff commenced an administrative due process
proceeding with the School District, regarding the School District's adoption of both the
January 19, 2006 and March 28, 2006 IEPs for the 2005-2006 school year, challenging
both the appropriate of the 2005-2006 IEP, as well as the School District's failure to
provide N.S. with a Pendency Program consistent with an FAPE.  The School District,
on April 4, 2006, appointed Walsh as the IHO to preside over administrative hearings in
connection with the matter.  On September 12, 2006, Plaintiff filed another
administrative complaint requesting an Impartial Due Process Hearing alleging the

failure by the School District and the CSE to provide N.S. with an IEP for the 2006-2007 school year,[3] and both matters were consolidated before IHO Walsh.

The impartial hearing lasted nine days, convening on June 2, 2006, and ending on October 19, 2006.  In his IHO Decision, issued on December 28, 2006, IHO Walsh found the substantive portions of the 2005-2006 IEP rendered the IEP defective, and ordered a number of steps to be taken by Plaintiff and the School District to ensure N.S.'s rights under the IDEA to an FAPE were protected.  The School District appealed the IHO to the NYSED where it was reviewed by SRO Kelly who, on March 19, 2007, issued the SRO Decision, annulling the IHO Decision, and remanding the matter to the School District's CSE to develop and implement an appropriate IEP for N.S.

Plaintiff challenged the SRO Decision by filing an administrative complaint with the School District as required under the IDEA, and an impartial hearing regarding the administrative complaint pursuant to 20 U.S.C. § 1415(f)(1)(A) was held on August 10, 2007 ("the impartial hearing"), at the School District's offices before Impartial Hearing Officer Paul T. Bumbalo ("IHO Bumbalo").  The School District was represented at the hearing by Ryan L. Everhart, Esq. ("Everhart"), who also represents the School District in this action.  During the impartial hearing, Plaintiff advised that she had filed an action in this court, United States District Court for the Western District of New York, appealing the SRO Decision.  Hearing Tr.[4] at 357.  Everhart inquired whether Plaintiff served the

---

[3] The IEP for the 2006-2007 school year is the subject of a separate action filed in this court on July 10, 2008, *B.J.S. v. State Education Department/University of New York*, 08-CV-00513A(F).

[4] References to "Hearing Tr. __" are to the page of the transcript from the August 10, 2007 impartial hearing, attached as an exhibit to the School District's motion (Doc. No. 49).

School District in connection with the federal action, to which Plaintiff responded, "I'm not required to.  The action is only against the SRO."  *Id*.  Everhart then advised, "If you're appealing an SRO decision, you need to serve the necessary parties, the School District."  *Id*.  Plaintiff replied, "No, I've already checked, researched and discussed it with the Courts and they told me not to give it to the District.  But I did bring proof that it was filed in District Court."  *Id*.

On July 10, 2008, Plaintiff commenced a similar action in this court, 08-CV-00513A(F) ("the 2008 Action"), alleging her child, N.S., was denied an FAPE for the 2006-2007 school year in violation of the IDEA.  Despite Plaintiff's statements to Everhart at the impartial hearing in the instant action that Plaintiff did not believe the School District was a proper defendant to the instant action, Plaintiff sued, in the 2008 Action, the same State Defendants sued in the instant action, as well as the School District.

On December 7, 2009, Plaintiff moved to file an amended complaint to join the School District as a necessary and indispensable defendant to this action, attributing the failure to earlier name the School District as a Defendant to the instant action to a misinterpretation of an amended provision of the IDEA governing judicial review of an SRO decision.  By order filed February 25, 2010 (Doc. No. 40), the undersigned granted Plaintiff's motion to amend, directing Plaintiff to file and serve the amended complaint within 20 days.  Accordingly, on March 12, 2010, Plaintiff filed the Amended Complaint (Doc. No. 43) ("Amended Complaint"), seeking relief from the SRO Decision based on numerous alleged errors in procedure, fact, and law, and requesting the School District comply with the IHO Decision.

On March 22, 2010, Plaintiff filed an Affirmation of Service (Doc. No. 44), executed on March 16, 2010, by Sheila Barr ("Barr"), who affirmed she had served a copy of the Amended Complaint on the School Board by hand-delivering the papers on Board of Education member Jeremiah Kane ("Kane").  Another Affirmation of Service (Doc. No. 45), also filed on March 22, 2010, establishes that on March 17, 2010, one Paul Davidson served the State Defendants with a copy of the Amended Complaint by mailing the papers to Assistant New York Attorney General Darren Longo ("Longo").

On April 5, 2010, Defendant School District filed a motion to dismiss the Amended Complaint (Doc. No. 49) ("School District's motion"), supported by the attached Affidavit of Ryan L. Everhart, Esq.  ("Everhart Affidavit"), with Exhibit A ("Everhart Affidavit Exh. A"),[5] and the Affidavits of Jeremiah Kane ("Kane Affidavit"), Kathy Tucker ("Tucker Affidavit"), and Rochelle Casselman ("Casselman Affidavit').  Defendant School District also filed on April 5, 2010, the Memorandum of Law in Support of Springville-Griffith Institute Cental School District Board of Education's Motion to Dismiss (Doc. No. 50) ("School District's Memorandum").

On April 9, 2010, Plaintiff moved to proceed *in forma pauperis* (Doc. No. 53).  By Text Order entered April 23, 2010 (Doc. No. 54), the undersigned granted Plaintiff's motion to proceed *in forma pauperis*, and appointed Mary E.  Maloney, Esq. ("Maloney") to represent Plaintiff in this action.

On October 20, 2010, State Defendants filed a motion to dismiss the Amended Complaint (Doc. No. 61) ("State Defendants' motion"), for failure to state a claim, and

---

[5] To correct an electronic signature error, the Everhart Affidavit and Exh. A were refiled on April 6, 2010 as Doc. No. 52.

the Memorandum of Law in Support of State Defendants' Motion to Dismiss the Amended Complaint (Doc. No. 62) ("State Defendants' Memorandum"), with an attached exhibit ("State Defendants' Exhibit").

On January 7, 2011, Maloney moved for permission to withdraw as Plaintiff's attorney (Doc. No. 66).  On March 4, 2011, the undersigned granted Maloney's request to withdraw as Plaintiff's counsel.  On March 18, 2011, the undersigned appointed Frank T. Housh, Esq.  ("Housh"), as Plaintiff's attorney.

Plaintiff, represented by Housh, filed several motions requesting extensions of time to file responses to the School District and State Defendants' pending motions to dismiss, including on June 13, 2011 (Doc. No. 81), June 24, 2011 (Doc. No. 83), and July 8, 2011 (Doc. No. 85), and the undersigned granted each request, finally extending Plaintiff's time to respond to July 15, 2011 (Doc. No. 89).  On July 27, 2011, Plaintiff filed in opposition to the School District's motion, the Affirmation of Frank T. Housh in Response to Defendant's Motion to Dismiss (Doc. No. 91) ("Housh Affirmation"), attached to which are the Affidavits of Plaintiff (Doc. No. 91-1) ("Plaintiff's Affidavit'), and Sheila J. Barr (Doc. No. 91-2) ("Barr Affidavit").

By letter to the court dated July 28, 2011, Assistant New York Attorney General Darren Longo (Doc. No. 92) ("Longo letter"), advised the undersigned that the Housh Affirmation does not address any of the issues raised by State Defendants in support of State Defendants' motion, requesting State Defendants' motion be treated as unopposed, with all claims against State Defendants dismissed.  On August 5, 2011, the School District filed in further support of its motion the Reply Declaration of Ryan L.Everhart, Esq. (Doc. No. 93) ("Everhart Reply Declaration"), and the Memorandum of

Law in Reply to Plaintiff's Opposition to Defendants [*sic*] Motion to Dismiss (Doc. No.

94) ("School District's Reply").  Oral argument was deemed unnecessary.

Based on the following, the School District's motion, insofar as it seeks to

dismiss for improper service, is DISMISSED as moot, and Plaintiff is GRANTED an

extension of time to effect proper service on Defendant School District and,

alternatively, insofar as it seeks to dismiss the Amended Complaint as untimely, should

be DENIED; State Defendants' motion should be GRANTED.


## DISCUSSION

### 1.    IDEA

To assist in understanding how this matter is before the court, a brief description

of the IDEA is provided.  The IDEA's primary purpose is to ensure students with

disabilities receive a free and appropriate public education ("FAPE"), emphasizing

special education and related services designed to meet such students' unique needs

and prepare them for further education, employment, and independent living.  20

U.S.C. § 1400(d)(1)(A); *Frank G. v. Board of Education of Hyde Park*, 459 F.3d 356,

371 (2d Cir. 2006).  An FAPE includes both special education and related services

designed to meet the student's unique needs according to a written individualized

education program ("IEP").  20 U.S.C. § 1414(d).  Each student's IEP is to be

developed by the relevant School District's Committee on Special Education ("CSE"),

and must be reasonably calculated to enable the student to receive educational

benefits.  *Id*.

A party may commence an administrative proceeding challenging an IEP as

failing to provide an FAPE by filing a written complaint with the relevant school district, which will require an administrative hearing before an Impartial Hearing Officer ("IHO"), selected from a list of approved IHOs maintained by the school district.  20 U.S.C. § 1415(f).  Any party wishing to seek relief from the IHO's decision may appeal the IHO's findings and decision to the State educational agency, upon which a State Review Officer ("SRO") is required to conduct an impartial review of the IHO's decision.  20 U.S.C. § 1415(g).  If not appealed, the IHO's decision is final.  20 U.S.C. § 1415(i)(1)(A).  Further, the SRO's decision is final unless a party to that decision commences an action in federal district court pursuant to 20 U.S.C. § 1415(i)(2)(A).  20 U.S.C. § 1415(i)(1)(B).  Because the instant action seeks review of the SRO's Decision, it is before the court pursuant to 20 U.S.C. § 1415(i)(2)(A) ("§ 1415(i)(2)(A)").

## 2.      Motions to Dismiss

Defendant School District moves to dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(5) for improper service, and, pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.  State Defendants move to dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim and pursuant to Rules 12(b)(6) and 21 on the basis that State Defendants are not proper parties to this action, *id.* at 7-20.

### A.      School District's Motion

The School District seeks dismissal of the Amended Complaint because Plaintiff herself attempted to effectuate service of the Amended Compliant in violation of

9

Fed.R.Civ.P. 4(c)(2), and Plaintiff failed to serve a Summons along with the Amended Complaint.  School District's Memorandum at 3-5.  The School District alternatively argues for dismissal of the Amended Complaint as time-barred because it was not commenced within four months of the March 19, 2007 SRO Decision, *id.* at 5-6, and the Amended Complaint's claims asserted against the School District do not, under Fed.R.Civ.P. 15(c), relate back to the original Complaint, in which the School District was not named as a Defendant, *id.*  at 6-10.

### 1.    Service of Process

The School District argues the Amended Complaint should be dismissed based on defective service of process, including that Plaintiff personally served the Amended Complaint on School Board member Jeremiah Kane ("Kane"), in violation of Fed.R.Civ.P. 4(c)(2), permitting only non-parties to serve process.  School District's Memorandum at 3-4.  The School District further maintains that even assuming, *arguendo*, that Barr, rather than Plaintiff, served the, Amended Complaint on Kane, as Plaintiff maintains, such service was nevertheless defective because Kane was not provided with the Summons as required.  *Id*. at 4.  As such, the School District urges the court to dismiss the Amended Complaint based on Plaintiff's failure to effect proper service.[6]  Plaintiff argues in opposition that whether the School District was properly served is a question of fact that cannot be decided by the court absent an evidentiary

---

[6] As relevant to this action, N.Y. Civ.Prac.L.&R.  ("N.Y. C.P.L.R.") § 311(a)[7] (McKinney's 2010), provides that service on the School District is properly effected by delivering the summons upon a school officer as defined under N.Y. Education Law § 2, defining "school officer" to include, *inter alia*, "a member of a board of education . . . in control of the schools by whatever name known in a . . . central school district. . . ."  N.Y. Educ.  Law § 2[13] (McKinney's 2009).

hearing on the matter.  Housh Affirmation ¶¶ 4-8.  Alternatively, Plaintiff maintains the

School District had constructive notice of the instant action and has failed to

demonstrate any prejudice if required to defend the action on the merits.  *Id*. ¶¶ 9-12.

> As relevant, Rule 4(c), governing service of process, provides

> > (1) *In General.  A summons must be served with a copy of the complaint*.  The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service.
> > (2) *By Whom*.  Any person who is at least 18 years old and *not a party* may serve a summons and complaint.

Fed.R.Civ.P. 4(c)(1) and (2) (italics added).

Similarly, Fed.R.Civ.P. 4(e)(1) provides service is considered proper if the person

effecting service follows the law of the state where the district court is located or service

is made, here, New York.  As relevant, N.Y. C.P.L.R. § 2103 provides that "[e]xcept

where otherwise prescribed by law or order of the court, papers may be served by *any*

*person not a party* of the age of eighteen years or over." N.Y. C.P.L.R. § 2103(a) (italics

added).  Accordingly, service on the School District was defective if either Plaintiff

served Kane, or Kane was served with only the Amended Complaint, unaccompanied

by the Summons.

> Absent timely and proper service in accordance with Rule 4, the court is without

personal jurisdiction over the defendant and the complaint must be dismissed pursuant

to Rule 12(b)(2).  *See Stoianoff v. Commissioner of Motor Vehicles*, 208 F.3d 204, at *

1 (2d Cir. 2000) ("We agree with the district court that process was not properly served

on the defendant Commissioner and that the court therefore lacked personal jurisdiction

over him."); *Sims v. Wegmans Food Markets*, 674 F.Supp.2d 429, 431 (W.D.N.Y.

2009).  When the method of service is challenged, it is the plaintiff's burden to prove, by

a preponderance of the evidence, that jurisdiction was, in fact, obtained over the

defendant by timely and proper service of the summons and complaint.  *Old Republic*

*Insurance Company v. Pacific Financial Services of America, Inc.*, ("*Old Republic*") 301

F.3d 54, 57 (2d Cir. 2002) (citing *NYCTL 1997-1 Trust v. Nillas*, 732 N.Y.S.2d 872, 873

(2d Dep't. 2001)).   "A defendant's sworn denial of receipt of service, however, rebuts

the presumption of proper service established by the process server's affidavit and

necessitates an evidentiary hearing."  *Old Republic*, 301 F.3d at 57-58 (citing *Skyline*

*Agency, Inc. v. Ambrose Coppotelli, Inc.*, 502 N.Y.S.2d 479, 483-84 (2d Dep't. 1986)).

Where, however, "the defendant fails to 'swear to specific facts to rebut the statements

in the process server's affidavits,'" no evidentiary hearing is required. *Id*.  (quoting

*Simonds v.Grobman*, 716 N.Y.S.2d 692, 693 (2d Dep't. 2000)).  Furthermore,

Fed.R.Civ.P. 4(m) requires service of the summons and complaint be made upon the

defendant within 120 days after the filing of the complaint, unless the plaintiff

demonstrates good cause for failing to effect service.

In the instant case, according to an Affirmation of Service filed on March 22,

2011 (Doc. No. 44) ("Affirmation of Service"), on March 16, 2010, Barr  hand-delivered

a copy of the Amended Complaint to Kane at a School Board meeting, thereby serving

the School District.  The Affirmation of Service does not indicate whether Barr also

served Kane with a Summons.  Furthermore, as discussed, infra, at 12-19, the parties

dispute whether Plaintiff or Barr effected service on Kane on March 16, 2010.  As such,

there exists a disputed issue of fact as to whether Plaintiff effected proper service on

Defendant School District within 120 days after filing the Amended Complaint on March

12

12, 2010.

In support of its assertion that Plaintiff, and not Barr, personally served Kane, the School District submits the Affidavits of Kane ("Kane Affidavit"), Kathy Tucker ("Tucker"), Secretary and District Clerk to the School District's Superintendent ("Tucker Affidavit") and the Affidavit of Rochelle Casselman ("Casselman"), Director of Special Education for the School District ("Casselman Affidavit").[7]   Kane explains that as a member of the School District's Board of Education ("School Board"), he was present at a School Board meeting on March 16, 2010, when, during a brief recess, two women approached him, neither of whom Kane knew by name.  Kane Affidavit ¶¶ 1-3.  Kane states "[t]he taller of the two women handed me a yellow envelope," and then immediately exited the room.  *Id.* ¶ 5.  Kane, without opening the envelope, immediately handed the envelope to Tucker who "opened the envelope and reviewed the documents contained therein."  *Id.* ¶ 6.  Kane maintains, "[u]pon information and belief, the envelope contained the Amended Complaint," and, also "[u]pon information and belief, the woman who handed [Kane] the envelope was Brenda J. Shepard, the Plaintiff in this matter."  *Id.* ¶ 7.

Tucker states that, as a School District employee, Tucker is "familiar" with both Plaintiff and Barr, and each woman's respective "physical appearance," such that Barr can distinguish between Plaintiff and Barr.  Tucker Affidavit ¶¶ 1-4.  Tucker maintains that, in her capacity as the School District's Clerk, Tucker attended the School Board's March 16, 2010 meeting, where she was seated "at the Clerk's table situated

---

[7] The Affidavits of Kane, Tucker, and Casselman are attached as part of Exhibit A to the School District's motion.

approximately five or six feet away from the Board member table." *Id*. ¶ 5.  Tucker's

location provided her with "an unobstructed view of the members of the Board." *Id*.

According to Tucker, "[d]uring a brief recess in the meeting, I witnessed the woman I

know to be [Plaintiff] hand a yellow envelope to Board member Jeremiah Kane," *id*. ¶ 7,

who immediately handed the envelope to Tucker, who "opened the envelope and

reviewed the documents.  They purported to be an Amended Complaint in the above-

captioned matter." *Id*. ¶ 8.  Tucker continues that "[t]he documents provided to Mr.

Kane by the Plaintiff did not include a Summons or any document purporting to be a

Summons." *Id*. ¶ 9.  Tucker maintains that Plaintiff left the meeting "moments after she

handed the envelope to Mr. Kane," and that Barr, whom Tucker observed was also

present at the meeting, did not hand any items or documents to Kane or any other

School Board member.  *Id*. ¶¶ 10-11.  Tucker also states she "later witnessed the

Plaintiff speaking to Board member Peter Sobota[, but] did not see Plaintiff hand any

documents and/or items to Mr. Sobata." *Id*. ¶ 12.

Similarly, Casselman states that during her tenure with the School District,

including in her current position as Director of Special Education, and her previous

positions as Committee on Special Education Chairperson, Assistant Principal of

Springville Elementary School, and a classroom teacher, Casselman is familiar with

Plaintiff, having met Plaintiff "on a number of occasions" and is aware of Plaintiff's

physical appearance.  Casselman Affidavit ¶¶ 1-3.  Casselman is also familiar with Barr

and her physical appearance, explaining Barr works with Plaintiff as "co-director of an

advocacy organization known as Western New York Family Advocacy for Children's

Educational Services, Inc." *Id*. ¶ 4.  Casselman was present at the March 16, 2010

School Board meeting, and, from her seat in the back of the room, was able to observe the table around which the School Board members were seated. *Id*. ¶ 5. Casselman maintains that during the meeting, she witnessed "the woman I know to be [Plaintiff]" hand to Kane a large yellow envelope which, "[u]pon information and belief, . . . contained the Amended Complaint." *Id*. ¶ 6. According to Casselman, Barr, who was also present at the meeting, did not give any items or documents to Kane or any other School Board member. *Id*. ¶ 7. Casselman asserts that Plaintiff and Barr left the meeting "moments after Plaintiff handed the envelope to Mr. Kane. They remained in the hallway until the conclusion of the meeting." *Id*. ¶ 8. Casselman concludes that "[u]pon receipt, Kane immediately handed the envelope to the District Clerk, Kathy Tucker." *Id*. ¶ 9.

In contrast, Plaintiff submits her own affidavit (Doc. No. 90-1) ("Plaintiff's Affidavit"), in which Plaintiff describes Barr as "a personal friend" who took leave from her job to accompany Plaintiff to the March 16, 2010 School Board meeting to "personally serve a Board of Education member my amended complaint and summons." Plaintiff's Affidavit ¶ 3. According to Plaintiff, the School Board meeting was contentious, becoming hostile between School Board members, causing School Board president Michael Connors ("Connors") to abruptly leave the meeting, resulting in a recess. *Id*. ¶¶ 5-6. Plaintiff maintains that during the recess, Kane and Tucker remained seated, but Casselman left the board room through the rear door to an office. *Id*. ¶ 6-7. During the recess, "Barr approached J. Kane and personally served him with an envelop [*sic*] that contained my amended complaint, and summons." *Id*. ¶ 8. While Barr was serving Kane, Plaintiff left her seat in the front row of the School Board

meeting room, and proceeded to the back of the room where Plaintiff attempted to exit

through a rear door, but was unable to do so because School Board member Sobota

was speaking with "a man named 'Joe' who had just finished addressing the Board as a

dissatisfied member of the community. . . " and Plaintiff's path to the rear door was

blocked.  *Id*. ¶ 9.  Plaintiff states that Sobota and Joe were arguing over how difficult it

is to be a School Board member, and Sobota stated he would sign the petition of

anyone who wanted to run for the School Board.  *Id*.  Sobota then walked from the rear

of the School Board meeting room back to his seat, with Plaintiff following him.  *Id*.

Plaintiff maintains she then introduced herself to Sobota, whom Plaintiff advised

she was running for a seat on the School Board and asked Sobota to sign her

nominating petition, and Sobota obliged.  Plaintiff's Affidavit ¶ 10.  Plaintiff states she

then exited the School Board meeting room through a door near the table where Tucker

was seated, and proceeded to the room's back door where Plaintiff stood with other,

unidentified members of the community and watched the rest of the meeting.  *Id*. ¶ 11.

Plaintiff denies serving any papers on any School Board member or school official

either on March 16, 2010, or any other date.  *Id*. ¶ 12.  Plaintiff also maintains that prior

to March 16, 2010, she had never met Kane.  *Id*. ¶ 13.  Plaintiff emphasizes that she

brought Barr with her to the School Board meeting solely for the purpose of having Barr

serve the Amended Complaint and summons on a School Board member.  *Id*. ¶ 16.

Plaintiff further asserts that she did not witness Kane hand the envelope containing the

Amended Complaint and summons to Tucker but, rather, observed the envelope,

unopened, placed on the table in front of Kane prior to the executive session.  *Id*. ¶ 24.

According to Plaintiff, she and Barr left the meeting when the Board Members went into

executive session.  *Id*. ¶ 25.  Plaintiff further maintains that "[i]n the past, Rochelle Casselman has often confused me for Sheila Barr."  *Id*. ¶ 26.

According to a hand-drawn schematic of the School Board meeting room ("the meeting room") ("schematic")[8] as it appeared for the March 16, 2010 meeting, submitted by Plaintiff in opposition to the School Board's motion, the School Board members were seated around a U-shaped table near the front or north end of the room, with the legs of the "U" extending toward the audience.  Sobota was seated at the end of the left leg of the "U", closest to the audience, directly across from Kane who was seated at the end of the "U"'s right leg, also closest to the audience.  There is a door on the right or east wall of the meeting room.  If one were to stand looking at the door on the meeting room's east wall, Kane's seat at the U-shaped table would be to the left of the door, and the table at which Tucker sat would be to the right of the door.  The audience seating was located behind Tucker's table, and was split into two sections by an aisle down the middle of the meeting room.  The table at which Casselman sat is located behind the audience, in the southwest corner of the meeting room.  The meeting room's rear door is located on the south wall.

Plaintiff also submits a copy of her Petition seeking to be nominated as a candidate for the School Board ("nominating petition"),[9] bearing Sobota's signature.  Although the nominating petition does not indicate when Sobota signed it, nowhere in the record is Plaintiff's account that Sobota signed it during the recess of the March 16,

_____

[8] Attached as an unnumbered exhibit to Plaintiff's Affidavit.  No dimensions for the room are provided or estimated, but the accuracy of the drawing has not been challenged.

[9] Attached as an unnumbered exhibit to Plaintiff's Affidavit.

17

2010 School Board meeting disputed.

In further support of Plaintiff's opposition to the School District's motion, Plaintiff also submits the affidavit of Sheila Barr (Doc. No. 90-2) ("Barr Affidavit"), who explains that because her work schedule requires her to work Tuesday evenings from 5:00 P.M. to 11:00 P.M., she is unable to attend School Board meetings, which are held on Tuesdays.  Barr Affidavit ¶ 2.  Barr, at Plaintiff's request, took Tuesday, March 16, 2010, off from work to attend the School Board's meeting "for the sole purpose of 'serving' the Amended Complaint on behalf of the Plaintiff to the board of education" because she is aware that personal service of legal papers on a party to litigation cannot be made by a party to that same litigation.  *Id*. ¶ 3.  Barr maintains that during the School Board meeting, an unscheduled recess was called when School Board president Mike Connors ("Connors"), became upset and angry and left the meeting room, followed by several School Board members.  *Id*. ¶ 4.  During the recess, Barr, alone and unaccompanied by Plaintiff who remained seated in the audience, approached Kane, who remained at his seat at the U-shaped table, and handed Kane the envelope containing the Amended Complaint, advising "Mr.  Kane, this is for you." *Id*. ¶¶ 4-5.  Barr maintains that Kane accepted the envelope, responding, "okay."  *Id*. Barr denies having previously meet Kane, stating she identified Kane only by the name plate on the table in front of Kane.[10]  *Id*. ¶ 6.  Barr then exited the meeting room through the door between Kane's seat and Tucker's seat, then turned to see where Plaintiff was, observing Plaintiff had left her seat in the audience and made her way to the back

---

[10] The School District does not dispute the use of such name plates to identify School Board members at this meeting.

of the meeting room where Plaintiff was speaking with other members of the audience. *Id*. ¶ 5, 7.  Still outside the meeting room, Barr traveled through the hallway around the meeting room to the door located in the back of the meeting room and waited for Plaintiff.  *Id*. ¶ 7.  From her vantage point near the meeting room's rear door, Barr observed Sobota speak with a man in the audience, and then return to his seat at the meeting room table. *Id*.  Barr also observed Plaintiff approach Sobota at the meeting room table, and Sobota comply with Plaintiff's request that to sign her School Board nominating petition.  *Id*.

Barr disputes Kane's assertions that during the School Board meeting's recess, he was approached by "'both women,'" insisting that "[a]t no time during the meeting did [Plaintiff] and I approach Mr. Kane together."  Barr Affidavit ¶ 9.  Barr particularly challenges Kane's identification of her given that Barr did not introduce herself to Kane, nor had Barr previosuly met Kane. *Id*. ¶ 10.  Barr comments on Tucker's asserting that both Barr and Plaintiff were in attendance at the March 16, 2010 School Board meeting, but does not mention that Barr and Plaintiff approached Kane together.  *Id*. ¶ 13.  Barr also challenges Casselman's assertions that she observed Plaintiff serving Kane with legal papers at the March 16, 2010 School Board meeting because Casselman was seated in the rear of the meeting room at a table stacked with audio equipment.  *Id*. ¶ 15.  Barr again comments on the absence of any assertion by Casselman that she observed both Barr and Plaintiff approach Kane, as Kane asserts, *id*. ¶ 16, and that Casselman fails to acknowledge that Plaintiff spoke with Sobota prior to leaving the meeting room.  *Id*. ¶ 17.

Although generally, the School District's sworn denial of proper service, thereby

rebutting the presumption of proper service established by the process server's affidavit

necessitates an evidentiary hearing, *Old Republic*, 301 F.3d at 57-58, here, assuming,

*arguendo*, that the March 16, 2010 service was defective, either because service of the

Amended Complaint was by Plaintiff, rather than Barr, or because the Amended

Compliant was not accompanied by the required summons, the court finds no such

hearing is necessary because the undisputed facts support granting an extension of

time in which to effect proper service of the summons and Amended Complaint.

 An extension of time in which to serve the summons and complaint must be

granted upon a showing of good cause.  Fed.R.Civ.P. 4(m)[2] ("if the plaintiff shows

good cause for failure [to timely effect proper service], the court shall extend the time

for service for an appropriate period."(bracketed material added)); *Zapata v. City of*

*New York*, 502 F.3d 192, 197 (2d Cir. 2007) ("It is clear under the second clause of

Rule 4(m) that an extension is always warranted upon a showing of 'good cause,'

because the rule commands that an 'appropriate' extension 'shall' be granted upon

such a showing.").  "Factors demonstrating good cause can include, among others, a

plaintiff's reasonable diligence in seeking to effect service, the absence of prejudice to

defendants as a result of the delay, and whether the plaintiff could timely reassert his

claims in the event of dismissal."  *Sims*, 674 F.Supp.2d at 434 (citing cases).

Nevertheless, while an extension of time to serve must be granted upon a showing of

good cause, the Second Circuit has made clear that "district courts have discretion to

grant extensions even in the absence of good cause."  *Zapata*, 502 F.3d at 196-97.

 Significantly, in *Zapata*, the Second Circuit stated that it would not be an abuse

of discretion for the district court, even in the absence of good cause, to grant an

extension of time to serve where "the dismissal without prejudice in combination with the applicable statute of limitations would result in a dismissal *with* prejudice. . .  so long as there are sufficient indications on the record that the district court weighed the impact that a dismissal or extension would have on the parties." *Zapata*, 502 F.3d at 197 (italics in original).  Although an extension of time is mandatory upon demonstrating good cause for failing to timely effect proper service, absent good cause, the court is not required to grant an extension of time to serve despite lack of prejudice to the defendant, and resulting great prejudice to the plaintiff posed by an expired statute of limitations. *Id*. at 197.  Rather, district courts have discretion "to decide on the facts of each case how to weigh the prejudice to the defendant that arises from the necessity of defending an action after both the original service period and the statute of limitations have passed before service."  *Id*. at 198 (citing *Coleman v. Milwaukee Board of School Directors*, 290 F.3d 932, 934 (7th Cir. 2002)).

In *Zapata*, the plaintiff, an inmate, failed to timely effect proper service of his § 1983 action on the defendant municipal correctional facility officer by whom Plaintiff alleged he was assaulted, serving the defendant officer four days beyond the 120-day service period, and 94 days after the expiration of the limitations period.  *Zapata*, 502 F.3d at 194.  The district court granted the defendants' motion to, *inter alia*, dismiss as time-barred the claims against the defendant officer for untimely service on the basis that because the relevant statute of limitations had expired, prejudice to the untimely served defendant officer was presumed.  *Id*. at 195.  On appeal, the Second Circuit stated that the district court's presumption that granting an extension of time to serve where the applicable statute of limitations had expired would be prejudicial to the

defendant, without weighing the impact of a dismissal or extension on the parties was erroneous. *Id*. at 197. Despite such error, the Second Circuit affirmed the district court's decision denying the plaintiff an extension in which to serve because the record failed to establish the defendant officer had any notice the action was forthcoming, much less already pending, albeit against other defendants, the plaintiff had made no effort to timely effect proper service, and advanced no excuse for the delay. *Id*. at 198-99.

In contrast, in the instant action, the School District most certainly knew of the action prior to the alleged improper service given that the instant action, which was commenced on July 13, 2007, was discussed at an Impartial Hearing held on August 10, 2007, at the School District Offices, at which the School District was represented by Everhart, who also represents the School District in the instant action, and who advised Plaintiff that her instant action appealing an SRO was required to be served on the School District. Impartial Hearing Transcript[11] at 357. As such, any prejudice to the School District should Plaintiff be granted an extension of time to re-serve to correct any of the alleged errors with the March 16, 2010 service is negligible. Even if the eventual service of the Amended Complaint on March 16, 2010 was improper, either because Plaintiff, rather than Barr, served Kane with the Amended Complaint, or the Amended Complaint was not accompanied by a summons, both scenarios Plaintiff vehemently denies, Plaintiff's attempted service on Kane on March 16, 2010, four days after filing the Amended Complaint on March 12, 2010, was undeniably prompt. Further, under

___

[11] Exhibit A to School District's motion.

the present circumstances, Plaintiff's provision of an excuse for the alleged improper service would be inconsistent with Plaintiff's denial that the service was improper. Moreover, dismissal without prejudice of the action for improper service, however, "in combination with the applicable statute of limitations would result in a dismissal *with prejudice.*" *Zapata*, 502 F.3d at 197.

Should the court, upon holding an evidentiary hearing, determine Plaintiff's service on March 16, 2010 was improper, the undersigned would also find, under the circumstances, that the impact on Plaintiff of dismissal would outweigh any prejudice to the School Board in defending this action, such that an extension of time in which to re-serve Defendant School District, to correct whatever errors occurred with the March 16, 2010, is warranted. As such, in the interests of judicial economy and efficiency, rather than holding an evidentiary hearing which, if the undersigned determined service on the School District was improper, followed by granting Plaintiff an extension of time to re-serve, the court grants an extension of time, and directs Plaintiff to re-serve the School District, **within 30 days of receipt of this Decision and Order and Report and Recommendation**, to correct any errors, should they exist, with the March 16, 2010 service of process. The School District's motion to dismiss based on improper service thus is DISMISSED as moot.

## 2.      Relation Back

The School District alternatively seeks to dismiss the Amended Complaint as time-barred because it was filed more than four months after the March 17, 2007 SRO decision, for which Plaintiff seeks judicial review, became final and binding, arguing

23

Plaintiff's claims asserted in the Amended Complaint do not relate back to the original

Complaint filed on July 13, 2007.  School District's Memorandum at 5-6.  According to

the School District, because Plaintiff knew the identity of the School District when the

original Complaint was filed, any assertion by Plaintiff that she failed to name the

School District as a defendant in the original Complaint based on a mistake of identity,

as required for the relation back doctrine set forth in Fed.R.Civ.P. 15(c)(1)(C) to apply,

must fail. *Id*.  at 6-9.  The School District further contends that Plaintiff's attempt to add

the School District as a defendant more than 2 ½ years after the action was

commenced is "highly prejudicial" to the School District. *Id*.  at 9-10.

Plaintiff does not dispute that the SRO decision challenged in the instant action

became final on March 17, 2007, and that any action in district court was required to be

filed within four months of such date, or July 17, 2007.  Rather, Plaintiff maintains that

the failure to name the School District as a Defendant in the original Complaint was a

mistake of identity, rather than a choice between parties to sue, such that the claims

contained in the Amended Complaint relate back to the original Complaint, which was

filed on July 13, 2007, within the applicable four-month limitations period, rendering the

Amended Complaint timely.  Housh Affirmation ¶¶ 13-14.

Fed.R.Civ.P. 15(c) governs when an amended pleading will relate back to the

filing of the original pleading for statute of limitations purposes.  As relevant to the

instant case,

> An amendment to a pleading relates back to the date of the original
> pleading when:
>
> * * * *
>
> (b) the amendment asserts a claim or defense that arose out of the
> conduct, transaction, or occurrence set out - - or attempted to be set out -

- in the original pleading; or
>> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period previously provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by the amendment:
>>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>> (ii) knew or should have known that the action would have been brought against it, *but for a mistake concerning the proper party's identity*.

Fed.R.Civ.P. 15(c)(1)(B) and (C) (italics added)

In the instant case, the School District neither contests nor concedes that Plaintiff's belatedly asserted claims against it arise out of the same conduct pleaded in the original Complaint, in satisfaction of Rule 15(c)(1)(B). Rather, the School District seeks to dismiss the Amended Complaint on the basis that the filing of the Amended Complaint on March 12, 2010, more than 2 ½ years after filing the original Complaint, is highly prejudicial to the School District given that the applicable statute of limitations for such claims is four months from the date the SRO decision became final on March 17, 2007. The School District further maintains the Amended Complaint does not comply with the requirement under Rule 15(c)(1)(C)(ii), *i.e.*, that, but for a mistake concerning the proper party's identity, the proposed defendants knew or should have known the action would have been brought against them, and, as such, the claims against the proposed defendants are time-barred.

In support of its argument that Plaintiff's claims against the School District must be dismissed as untimely, the School District relies on *Barrow v. Weathersfield Police Dep't.*, 66 F.3d 466 (2d Cir. 1996), and *Cornwell v. Robinson*, 23 F.3d 694 (2d Cir. 1994). In *Cornwell*, the Second Circuit held that Rule 15(c)(1)'s requirement "that a

defendant 'knew' he was not named due to a mistake concerning identity presupposes

that in fact the reason for his not being named was a mistake in identity."  *Cornwell*, 23

F.3d at 705.  Specifically,

> Rule 15(c) does not allow an amended complaint adding new defendants to
> relate back if the newly-added defendants were not named originally because
> the plaintiff did not know their identities.  Rule 15(c) explicitly allows the relation
> back of an amendment due to a 'mistake' concerning the identity of the parties
> (under certain circumstances), *but the failure to identify individual defendants
> when the plaintiff knows that such defendants must be named cannot be
> characterized as a mistake*.

*Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 470 (2d Cir. 1996) (italics added)

It is significant that in *Barrow*, the Second Circuit held that Rule 15(c)'s requirements for

relation back were not met where the plaintiff sought to substitute named defendants

for "John Doe" defendants because the plaintiff was seeking to correct a lack of

knowledge, rather than to correct a mistake regarding the defendants' identities.  *Id*.

Put another way, where an amendment is sought to add new defendants, the

amendment will not relate back to the filing date of the Complaint, and thus avoid being

time-barred, "if the newly-added defendants were not named originally because the

plaintiff did not know their identities."  *Barrow*, 66 F.3d at 470.  Instead, where a plaintiff

seeks to add a defendant whom the plaintiff, although aware of the purported unlawful

misconduct, was not required to sue, the plaintiff's failure to name the person as a

defendant "must be a matter of choice, not mistake."  *Robinson*, 23 F.3d at 705.

Recently, however, the Supreme Court granted certiorari "to resolve tension

among the Circuits over the breadth of Rule 15(c)(1)(C)(ii)."  *Krupski v. Costa Crociere,

S.p.A.*, __ U.S. __, 130 S.Ct.  2485, 2492 & n. 2 (2010) (citing cases, including

*Cornwell*, 23 F.3d 694, to demonstrate varying interpretations of Rule 15(c)(1)(C)(ii)

26

among the circuits).  In *Krupski*, the plaintiff, a cruise ship passenger, brought an action

seeking to recover for personal injuries sustained while aboard a cruise ship.  *Krupski*,

130 S.Ct. at 2490.  Although the back of plaintiff's ticket identified the correct carrier to

be notified and sued in the event of a personal injury while on board one of its ships,

the plaintiff sued the sales and marketing agent, listed on the front of the ticket and

bearing a name very similar to the carrier who was the proper party to the action.  *Id*. at

2490-91.  After the applicable statute of limitations had expired, the incorrectly sued

defendant advised the plaintiff of the identity of the correct defendant, moving for

summary judgment on that same ground, causing the Plaintiff, in opposing summary

judgment, to move to amend the complaint to name the carrier as the defendant.  *Id*.  at

2491.  The district court denied summary judgment and granted the plaintiff's motion to

amend.  After the plaintiff filed the amended complaint correctly naming the carrier as

the defendant, the defendant carrier moved to dismiss the amended complaint as

untimely, contending the amended complaint could not relate back under Rule 15(c)

because the plaintiff had delayed in moving to amend to name the correct defendant for

months after being informed by the defendant agent that the carrier was the correct

defendant.  *Id*. at 2491-92.  The Eleventh Circuit Court of Appeals concluded that,

having been informed by the agent that the carrier was the proper defendant in the

agent's answer, corporate disclosure statement listing the carrier as an interested party

to the action, and the summary judgment motion papers, plaintiff knew of the proper

defendant, yet delayed months in moving to file an amended complaint, thereby

indicating the plaintiff knew the proper defendant, yet chose to sue another party. *Id*.  at

2492.

The Supreme Court, in reversing the appellate court's decision, stated

That a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity.  A plaintiff may know that a prospective defendant – call him party A – exists, while erroneously believing him to have the status of party B.  Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim.  If the plaintiff sues party B instead of party A under these circumstances, she has made a 'mistake concerning the proper party's identity,' notwithstanding her knowledge of the existence of both parties.  The only question under Rule 15(c)(1)(C)(ii) is whether party A knew or should have known that, absent some mistake, the action would have been brought against him.

*Krupski*, 130 S.Ct.  at 2494.

Further, the Court specifically rejected the notion that the fact that a plaintiff is aware of the existence of two parties, yet sues the wrong party, should be construed as demonstrating the plaintiff chose to sue the wrong party, explaining that "[t]he reasonableness of the mistake is not itself at issue.  As noted, a plaintiff might know that the prospective defendant exists, but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misconception.  That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied."  *Id*.

Similarly, in the instant case, that Plaintiff's failure to originally sue the School District was a mistake is evident by her response to Everhart's statement to Plaintiff at the August 10, 2007 Impartial Hearing that "If you're appealing an SRO decision, you need to serve the necessary parties, the School District."  Impartial Hearing Transcript at 357.  Specifically, Plaintiff responded, "No, I've already checked, and researched and discussed it with the Courts and they told me not to give it to the District.  But I did bring

28

proof that it [the original complaint in this action] was filed in District Court." *Id*.

(bracketed text added).  The August 10, 2007 Impartial Hearing was held within the 120

days Plaintiff had to serve the original complaint, filed on July 13, 2007, such that the

School District, through Everhart's presence at the impartial hearing, had constructive

notice of the action as required by Rule 15(c)(1)(C)(i) (requiring that the party to be

brought in by amendment must have, within the 120-day period for service provided by

Rule 4(m), received such notice of the action).  *See Krupski*, 130 S.Ct. at 2492 (finding

Rule 15(c)(1)(C)(i)'s requirement of notice within the time to serve satisfied where party

plaintiff sought to add as defendant had, based on service on agent of both parent and

subsidiary, "constructive notice of the action and had not shown that any unfair

prejudice would result from relation back."), and 2497, n. 5 (noting "[t]he Advisory

Committee Notes to the 1966 Amendment [to Rule 15] clarify that 'the notice need not

be formal.'" (quoting Advisory Committee's 1966 Notes 122)).  Significantly, Everhart,

as the School District's attorney, should have suspected, based on the exchange

between Plaintiff and Everhart during the August 10, 2007 impartial hearing, that

Plaintiff had made a mistake in failing to name the School District as a defendant when

Everhart knew the School District was the only proper defendant to this action and

Plaintiff insisted, albeit mistakenly, a fact known to Everhart, otherwise.  *See Krupski*,

130 S.Ct. at 2498 (observing that party the plaintiff sought to add as a defendant should

have suspected the plaintiff had made a mistake when its own activities were described

in the complaint that named another party as the defendant).  *See also Abdell v. City of

New York*, 2006 WL 2620927, at * 3 (S.D.N.Y. Sept. 12, 2006) (holding, in context of

relation back under Rule 15, corporation counsel had notice of the unnamed

defendant's identity because it was representing the unnamed defendant on related state claims of false imprisonment stemming from the same incident); and *Muhammad v. Pico*, 2003 WL 21792158, at * 20 (S.D.N.Y. Aug.  5, 2003) ("Under the constructive notice doctrine, 'the court can impute knowledge of a lawsuit to a new defendant government official through his attorney, when the attorney also represented the officials originally sued, so long as there is some showing that the attorney[s] knew the additional defendants would be added to the existing suit.'" (quoting *Scott v. Coughlin*, 944 F.Supp. 266, 270 (S.D.N.Y. 1996))).

Nor can Plaintiff be faulted for waiting until December 7, 2009, to move to file the Amended Complaint bringing in the School District as a Defendant.  Rather, the Supreme Court has held that a plaintiff's conduct during the Rule 4(m) period subsequent to filing a complaint, here, 120 days, is relevant only to the prospective defendant's understanding as to whether the plaintiff initially made a "mistake concerning the proper party's identity." *Krupski*, 130 S.Ct. at 2496-97.  According to the Court, Rule 15(c)(1)(C) "plainly sets forth an exclusive list of requirements for relation back, and the amending party's diligence is not among them.  Moreover, the Rule mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion." *Id*. at 2496 (citing Rule 15(c)(1) ("An amendment . . . *relates back* . . . when" the three listed requirements are met)" (emphasis in original)).

Accordingly, the record establishes that Plaintiff's failure to name the School District as a defendant in the Complaint was a mistake, and that the School District had, by August 10, 2007, *i.e.*, within 120 days of filing of the Amended Complaint, received

notice of the instant action such that it will not be prejudiced by defending the action on

its merits, and knew or should have known that, but for a mistake in the proper party's

identity, Plaintiff would have sued the School District.  The School District's motion,

insofar as it seeks to dismiss the Amended Complaint as time-barred based on the

statutes of limitations grounds, should be DENIED.


### B.    State Defendants' Motion

State Defendants seek to dismiss the Amended Complaint for failing to state a

claim and on the basis that none of the State Defendants are proper parties to this

action.  State Defendants' Memorandum at 3.  State Defendants maintain the Amended

Complaint contains no factual allegations against Commissioner Mills and NYSED, that

there is no factual basis for any claim against Mills or NYSED, no legal basis for any

claim against NYSED, and that although the Amended Complaint asserts factual

allegations against SRO Kelly, including that Kelly erred in his ruling and in the

administrative appellate review that is the subject of this action, such conduct forms no

basis for any claim.  *Id*. at 5-6.  State Defendants further maintain they are not proper

parties to this action because the SRO Decision involves a dispute between Plaintiff

and the School District regarding the provision of a proper IEP to N.S., Plaintiff's child.

*Id*.  at 7.  Plaintiff has not responded in opposition to State Defendants' motion and, by

letter to the court dated July 28, 2011 (Doc. No. 92), State Defendants requested the

court treat its motion as unopposed and dismiss all claims against State Defendants.

Preliminarily, the court observes that the arguments State Defendants proffer in

support of their instant motion to dismiss are essentially identical to those proffered in

support of State Defendants' motion to dismiss in the 2008 Action, 08-CV-000513A(F).

*Compare* State Defendants' Memorandum, *passim*, with State Defendants'

Memorandum of Law filed in 2008 Action on June 12, 2009 (Doc. No. 21).  Significantly,

in a Report and Recommendation filed by the undersigned on February 9, 2010 (2008

Action, Doc. No. 40), dismissal of all claims asserted against State Defendants was

recommended.  The Report and Recommendation was adopted by Judge Arcara on

March 23, 2010 (2008 Action, Doc. No. 46) (reported at *B.J.S. v. State Education*

*Department/University of State of New York*, ("*B.J.S.*"), 699 F.Supp.2d 586 (W.D.N.Y.

2010)).  As such, State Defendants have already been dismissed from the 2008 Action

for the same reasons State Defendants seek dismissal from the instant action.

Accordingly, the court's discussion of State Defendants' motion in the instant action

largely tracks the February 9, 2010 Report and Recommendation in the 2008 Action.


### 1.   Immunity of SRO Kelly

In both the instant action and the 2008 action, State Defendants moved to have

all claims dismissed as against SRO Kelly for lack of subject matter jurisdiction

contending that SRO Kelly, as a quasi-judicial review decision-maker, was entitled to

absolute immunity.  State Defendants' Memorandum at 13-15; 2008 Action, Doc. No.

21, at 9-11.  In the 2008 Action, the undersigned found that Plaintiff request for "judicial

review and nullification of SRO Kelly's determination of Plaintiff's administrative appeal

directed to the IEP for N.S. for the 2006-2007 school year, established by the School

District, and modified by the IHO," sought "a retroactive form of relief" from SRO Kelly's

"past conduct as a quasi judicial officer . . . ."  *B.J.S.*, 699 F.Supp.2d at 595.  As such,

SRO Kelly was entitled to absolute immunity from all claims asserted against him in the 2008 Action. *Id*.

Similarly, in the instant action, Plaintiff's claims against SRO Kelly essentially seek judicial review and nullification of SRO Kelly's determination of the School District's appeal of the IHO Decision directed to the IEP for N.S. for the 2005-2006 school year.  Plaintiff thus is requesting "judicial review and nullification" of SRO Kelly's determination of Plaintiff's administrative appeal directed to the 2005-2006 school year IEP developed for N.S. by the School District, as modified by the IHO, and thereby seeks "a retroactive form of relief" from SRO Kelly's "past conduct as a quasi judicial officer . . . ," and SRO Kelly is absolutely immune from all claims asserted against him in the instant action.  *B.J.S.*, 699 F.Supp.2d at 595.

State Defendants' motion requesting the action be dismissed as against SRO Kelly on the basis that Kelly is absolutely immune from liability in this case should be GRANTED.  The court thus addresses whether the action should be dismissed for failure to state a claim against not only NYSED and Commissioner Mills, but also against SRO Kelly in the alternative should the District Judge disagree with the recommendation that SRO Kelly is absolutely immune from liability in the instant action.

### 2.    Failure to State a Claim

On a motion to dismiss under Rule 12(b)(6), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is

required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor).  Two recent Supreme Court cases require application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'"  *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009)).  "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 129 S.Ct. at 1949).  "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the review court to draw on its judicial experience and common sense.'"  *Id*. (quoting *Iqbal*, 129 S.Ct. at 1950). Despite *Twombly*, courts remain obligated to liberally construe a *pro se* complaint. *Harris*, 572 F.3d at 72 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Twombly*, 550 U.S. at 570.

In both the instant action and the 2008 action, State Defendants move to have all claims dismissed as against Commissioner Mills and NYSED because the respective pleadings are devoid of any factual allegations against Mills or NYSED, State

Defendants' Memorandum at 5; 2008 Action, Doc. No. 21 at 13-14.  State Defendants

further assert neither Mills nor NYSED is a proper party to either action because there

is no justiciable issue between Plaintiff and Mills or NYSED given that the IDEA's

statutory structure provides that neither Mills nor NYSED is a party to the proceedings

before the IHO or the SRO, nor involved in any review that is subject to the instant

litigation, and the relief Plaintiff seeks cannot be obtained from Mills or NYSED.  State

Defendants' Memorandum at 8-9 (Mills) and16-20 (NYSED); 2008 Action, Doc. No. 21,

at 11-13.  In the 2008 Action, the undersigned found that the IDEA's statutory scheme

establishing the right to an FAPE and a proper IEP to effectuate such FAPE are to be

implemented by a local educational agency, unless the disabled student is to be

enrolled in a school program designed for certain disabilities which is directly operated

by a state educational agency.  *B.J.S.*, 699 F.Supp.2d at 599.  Because nothing in the

IDEA either directly or indirectly suggests that by complying with the IDEA's

requirement to provide impartial review of an administrative complaint challenging an

IEP, State Defendants do not thereby become parties to such disputes.  *Id*.

Further, this court, as well as other district courts within New York, have

concluded that NYSED may not be sued as a defendant to an IDEA action brought

pursuant to § 1415(i)(2)(A) challenging the failure to provide an eligible student with a

proper IEP to effectuate an FAPE.  *Id*. at 600-01 (citing, *inter alia*, *Kramer v. Springville-*

*Griffith Institute Central School District Board of Education*, 02-CV-765S, Slip. Op. at

21-23 (W.D.N.Y. July 31, 2003) (attached as exhibit to Defendants' Memorandum),

*Adrian R. v. New York City Board of Education*, 2001 WL 1175103, at * 1 (S.D.N.Y.

Oct.  2, 2001); and *Mr. & Mrs.  "B", individually and on behalf of "C.B." v.  Board of*

*Education of the Syosset School System*, 1998 WL 273025, at * 4 (E.D.N.Y. Jan. 15,

1998)).  Additionally, the NYSED Commissioner's exercise of general supervisory

authority over the administration of public education within New York, including New

York's general obligation to comply with the IDEA, does not alter the court's finding that

neither Commissioner Mills, SRO Kelly, nor NYSED, headed by the Commissioner, is a

proper party to an action pursuant to § 1415(i)(2)(A) to review a local school board's

decision regarding a disabled student's IEP.  *B.J.S.*, 699 F.Supp.2d at 601.  Nor does

the Commissioner's promulgation of regulations under which local school boards are

required to provide special education to disabled students, as well as procedural

safeguards to such students and their parents in compliance with the IDEA, subject the

Commissioner, SRO Kelly, or NYSED to liability under the IDEA. *Id*.  at 603-09.

In light of the plethora of law contrary, including this court's decision in the 2008

Action on essentially similar claims, Plaintiff cannot state a plausible claim against

Commissioner Mills, SRO Kelly, or NYSED for violations of the IDEA for failing to

provide N.S. with a proper IEP to effectuate an FAPE during the 2005-2006 school

year.   As such, insofar as State Defendants move to dismiss all the claims asserted

against them, the motion should be GRANTED.

## <u>CONCLUSION</u>

Based on the foregoing, School District's motion (Doc. No. 49), insofar as it

seeks dismissal of the Amended Complaint for improper service, is DISMISSED as

moot, and Plaintiff is GRANTED an extension of time to re-serve Defendant School

District with the summons and Amended Complaint **within 30 days of receipt of this**

**Decision and Order and Report and Recommendation**, and, alternatively, insofar as

it seeks dismissal of the Amended Complaint as time-barred, should be DENIED; State

Defendants' motion (Doc. No. 61), should be GRANTED.

SO ORDERED, as to Defendant
School District's motion to dismiss insofar
as it seeks to dismiss for failure to effect
proper service.

/s/ *Leslie G. Foschio*

_____
             LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


                                    Respectfully submitted, as to State
                                    Defendants' motion to dismiss, and
                                    School District's motion to dismiss as
                                    time-barred,

                                         /s/ *Leslie G. Foschio*

                                    _____
                                          LESLIE G. FOSCHIO
                                    UNITED STATES MAGISTRATE JUDGE


DATED:        August 11, 2011
             Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      August 11, 2011
               Buffalo, New York